UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PRECOR INCORPORATED, a Delaware corporation; and LARRY D. MILLER, an individual,

Plaintiffs,

v.

FITNESS QUEST, INC., a Delaware corporation; and NEW BALANCE ATHLETIC SHOE, INC., a Massachusetts corporation,

Defendants.

Case No. C05-0993L

ORDER ON MOTION FOR PRELIMINARY INJUNCTION

## I. Introduction

This matter comes before the Court on "Plaintiffs' Motion for Preliminary Injunction" (Dkt. # 19). Plaintiffs Precor Incorporated and Larry Miller (hereinafter "Precor") filed a complaint for patent infringement against Fitness Quest, Inc. and New Balance Athletic Shoe, Inc. (hereinafter "Fitness Quest"). Precor alleges that Fitness Quest's "Eclipse" elliptical trainers infringe U.S. Patent No. 5,383,829 ("the '829 patent"), which was issued to Larry Miller and exclusively licensed to Precor. Precor has filed the instant motion to seek a preliminary injunction preventing Fitness Quest from selling its new 8.0e Elliptical Trainer, which is

marketed under the New Balance brand name. The Court has reviewed the parties' extensive briefings, instructive orders and reports from a similar case, and has given the parties an opportunity to present their arguments in court.

## II. Factual Background

James Miller originally received U.S. Patent No. 5,242,343 ("the '343 patent") on September 7, 1993, for a "stationary exercise device," which eventually became known as an "elliptical trainer," due to the approximate path traveled by the device's foot guides. During the prosecution of this patent, the application was initially denied as anticipated by prior art - U.S. Patent No. 3,316,898 (issued May 2, 1967) ("the Brown patent"). Miller added two limitations to his patent in order to overcome the Brown patent: the rear orientation of the axis at the back of the device and the inclined track at the front of the device. The application was approved with these modifications, but prior to its issuance, Miller filed a continuation application. The device was ultimately patented under the now-contested '829 patent, which was issued January 24, 1995. The '829 patent contained a different limitation to overcome the Brown patent.

During the prosecution of the eighteen claims of the '829 patent (numbered 18–35 because the original seventeen claims were cancelled and re-written), Miller was required to provide a "restriction requirement," in which he elected one embodiment of his invention for a prosecution on the merits. See 37 C.F.R. § 1.141(a). Miller chose the species embodied by figure 1, which included claims 18, 21–24, and 26, and he cancelled claims 19, 20, 25 and 27–35. Later in the process, he added claims 36 and 37. Of the claims submitted, all except 37 were allowed. Claim 36, which became claim 7, is the subject of the current dispute.[1]

In 1997, Miller sought a re-examination of his patent, and that action was consolidated with the re-examination requests of several of Precor's competitors in the elliptical market. At

---

[1] Precor alleges infringement of claim 23. Claim 23 explicitly incorporates claim 22, which explicitly incorporates claim 17, which explicitly incorporates claim 7.

first, the examiner rejected claim 1 as anticipated by prior art, based on the Eschenbach patent. Instead of challenging this finding on the merits, Miller "swore behind" Eschenbach's patent, meaning that Miller had conceived of his invention prior to the day Eschenbach's was filed. The examiner then confirmed claims 1–6 of Miller's '829 patent, accepted a modified claim 7, and allowed 68 new claims. Claim 23 of these new claims describes a device with "manually graspable handgrips" that move in coordination with "arm links" (described in claim 22) that are coupled to the "footlinks" (described in claim 17) of the elliptical device (described in claim 7).

## III. Discussion

### A. Preliminary Injunction Standard for a Patent Case

The party seeking the preliminary injunction bears the burden of proving the necessary elements. Precor is entitled to a preliminary injunction if it shows: "(1) a reasonable likelihood of success on the merits; (2) irreparable harm if an injunction is not granted; (3) a balance of hardships tipping in its favor; and (4) the injunction's favorable impact on the public interest." Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed. Cir. 2001). None of the factors is dispositive; rather, the Court will "weigh and measure each factor against the other factors and against the form and magnitude of the relief requested." Hybritech, Inc. v. Abbott Labs., 849 F.2d 1446, 1451 (Fed. Cir. 1988).

Importantly, the Federal Circuit has held that upon a clear showing of patent validity and infringement, the movant "would be entitled to a presumption of irreparable harm." Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys., 132 F.3d 701, 708 (Fed. Cir. 1997). Nonetheless, the Court "may decline to issue a preliminary injunction if the movant does not prove either of these factors." Jeneric/Pentron, Inc. v. Dillon Co., 205 F.3d 1377, 1380 (Fed. Cir. 2000). The decision to grant a preliminary injunction is within the sound discretion of the district court, and only will be reversed "upon an error of law or clearly erroneous factual findings." Novo Nordisk of N. Am. v. Genentech, Inc., 77 F.3d 1364, 1367 (Fed. Cir. 1996).

**B. Success on the Merits**

In order to succeed on the merits, Precor must demonstrate both that the '829 patent is valid and enforceable, and that Fitness Quest's 8.0e Elliptical Trainer infringes the patent. See Genentech, Inc. v. Novo Nordisk A/S, 108 F.3d 1361, 1364 (Fed. Cir. 1997). Precor notes in its motion that the patent has been heavily litigated in the past, and argues that the industry has accepted the validity of this patent. Precor also argues that Judge Zilly's claim construction from a suit between Precor and another competitor is the law of the case and need not be litigated here. See Precor, Inc. v. Life Fitness, No. 00-120Z (W.D. Wash. Dec. 20, 2002) (claim construction order). Although Judge Zilly's rulings in that case are persuasive authority, neither stare decisis nor offensive collateral estoppel is appropriate here. Furthermore, industry acquiescence is neither dispositive nor, as Fitness Quest has shown, factually undisputed.

Similarly, as Judge Zilly noted in his order on preliminary injunction, the presumption of patent validity that arises from the fact that a patent was issued and withstood re-examination does not "relieve a patentee who moves for a preliminary injunction from carrying the normal burden of demonstrating that it will likely succeed on all disputed liability issues at trial, even when the issue concerns the patent's validity." New England Braiding Co. v. A.W. Chesterton Co., 970 F.2d 878, 882 (Fed. Cir. 1992). The Court must still "make an assessment of the persuasiveness of the challenger's evidence." Id.

Finally, the Court is cognizant that in order to meet its burden in opposition to a preliminary injunction motion, Fitness Quest only needs to raise a substantial question as to the validity or enforcement of Precor's patent, or as to the infringement of its device. See Genentech, 108 F.3d at 1364 ("In other words, if Novo raises a 'substantial question' concerning validity, enforceability, or infringement (i.e., asserts a defense that Genentech cannot show 'lacks substantial merit') the preliminary injunction should not issue."). Because the process for disposing of a preliminary injunction motion in a patent case is necessarily less formal, the

"record does not usually allow for a reliable resolution of the merits." New England Braiding, 970 F.2d at 883. ("While it is not the patentee's burden to prove validity, the patentee must show that the alleged infringer's defense lacks substantial merit."). This order concludes that on the record available thus far to the Court, Fitness Quest has raised a substantial question as the validity of Precor's patent.

**1. Patent Validity**

In its argument against the validity of the '829 patent, Fitness Quest first focuses on questions of obviousness with regard to the existence of two items of prior art: the Brown patent and the Eschenbach patent. Importantly, these argument surfaced in the Life Fitness case before Judge Zilly, but that motion relied on claim 1, not claim 23. Claim 23 includes arm links that are not present in the Brown and Eschenbach patents. Fitness Quest modifies the Life Fitness argument to again claim that Brown and Eschenbach anticipate Miller's patent and, in view of the movable arm links in the Jarriel patent, render Miller's claim 23 obvious. Obviousness is a question of fact which requires the determination of four factors: "(1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) the extent of any proffered objective indicia of nonobviousness." Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH, 139 F.3d 877, 881 (Fed. Cir. 1998).

Judge Zilly distinguished the Brown patent because it did not contain the inclined path that is present in the claim 1 limitation, and because the record evidence did not establish the actual footpath found in the Brown device. Fitness Quest argues that these limitations are resolved in the case at hand because claim 23 does not include the inclined path (instead, the foot links are coupled to the arm links in the reciprocal front end of the device) and because its expert has more thoroughly analyzed the potential footpath in the Brown device. Brienza Decl. at ¶ 29, ex. I. Fitness Quest offers a similar argument about the Eschenbach patent in view of

the Jarriel patent. Fitness Quest argues, and Precor does not dispute, that the patent examiner's conclusion that Miller predates Eschenbach is not binding on this Court. Fitness Quest next argues, with Dr. Brienza's support, that the addition to the Eschenbach patent of the Jarriel arm links would be obvious. Brienza Decl. ¶ 36, exs. K, L. The Court concludes that on the factual record currently available, Precor has failed to show that these arguments lack substantial merit.

Second, Fitness Quest argues that the process used to re-examine Miller's patent raises substantial questions of validity. When a patent applicant faces a restriction requirement, he must abandon non-elected claims that are not generic to the elected species. Alternatively, the applicant can file a divisional application and pursue recognition of the other species separately. See 35 U.S.C. § § 120, 121. When Miller faced the restriction requirement he abandoned several of his claims, including those that resembled the arm-linked device represented in claim 23. During the re-examination process, Fitness Quest argues, Miller illicitly "re-captured" his previously mandated abandonment by including in the 68 additional claims several of the claims that the prior patent investigator would not allow. In short, Fitness Quest argues, Miller "pulled a fast one" on the United States Patent Office. Precor fails to adequately address this argument in its reply, other than to assert that it "is irrelevant and does not raise any question regarding the validity of Claim 23." Reply at 8.

**2. Conclusion**

The Court concludes that through its arguments on validity, Fitness Quest has raised a substantial question about Precor's likelihood of success on the merits. Therefore, the Court will not reach the question of infringement, which would require a tentative, non-binding claim construction.

**C. Irreparable Harm**

Although "a grant of preliminary injunction does not require proof of infringement beyond all question," the movant must also show irreparable harm. Ill. Tool Works, Inc. v.

Grip-Pak, Inc., 906 F.2d 679, 682 (Fed. Cir. 1990). Regardless of whether plaintiff is entitled to a presumption of irreparable harm, that presumption may be rebutted on the individual facts of a case. Roper Corp. v. Litton Sys., 757 F.2d 1266, 1272–73 (Fed. Cir. 1985) (presumption of harm rebutted where defendant had not yet and had no immediate plans to enter the market with allegedly infringing device). Upon review, the Court concludes that there has not been a showing of irreparable harm.

First, Precor's sales will not be directly harmed by Fitness Quest's sales because Fitness Quest's machines are targeted at a different demographic: the home user. The Federal Circuit has held that irreparable harm is not shown if the patentee "does not run the risk of losses of sales or goodwill in the market; nor has . . . suggested that [the alleged infringer's] activities have precluded it from licensing its patent or entering the market." High Tech Med. Instrumentation v. New Image Indus., 49 F.3d 1551, 1556 (Fed. Cir. 1995). The least expensive product offered on the market by Precor is priced at $2,299.00, and is marketed in the "more expensive high-end retail or commercial markets." Auvil Decl. Ex. S at 3. In contrast, Fitness Quest's 8.0e can be purchased for $699.49. Precor's sales are unlikely to suffer directly from the sale of Fitness Quest's 8.0e elliptical device.[2]

Second, it is undisputed that Fitness Quest and New Balance are financially stable companies with significant financial resources to pay the damages resulting from this action, if any. A monetary award will address many of Fitness Quest's concerns regarding injury. "The loss of competitive advantage, convoyed sales, and the sunken costs of research and development and royalties are simply other ways to characterize monetary losses that can be approximated by an award 'adequate to compensate for the infringement.'" Precor, Inc. v. Life Fitness, No. 00-120Z at 24 (W.D. Wash. Aug. 21, 2002) (preliminary injunction order) (citing

---

[2] This is a marked difference from the otherwise analogous Life Fitness case, in which the adverse parties occupied the same market, but Precor still was denied a preliminary injunction.

35 U.S.C. § 284); see also Nutrition 21 v. United States, 930 F.2d 867, 871 (Fed. Cir. 1991) ("Moreover, [defendant] is acknowledged to be a large and financially responsible company which would be answerable in damages."). In addition, plaintiffs could seek and receive treble damages if they prove willful infringement at trial. See 35 U.S.C. § 284.

Capacity to pay damages is not the exclusive factor in assessing irreparable harm, however, because such an approach would mean "infringers could become compulsory licensees for as long as the litigation lasts." Atlas Powder Co. v. Ireco Chems., 773 F.2d 1230, 1233 (Fed. Cir. 1985). If courts simply allowed financially stable infringers to continue infringement until the resolution of the litigation, then patentees would be prevented from exercising their right to exclude—instead of simply collecting royalties on—infringing devices. See 35 U.S.C. § 154. To this end, Precor has focused on the non-monetary damages it foresees from Fitness Quest's alleged onslaught on the elliptical market with its 8.0e machine.

Precor argues that even if Fitness Quest's machines attract a different part of the market the dramatic marketing effort nonetheless irreparably harms Precor because it will serve to establish Fitness Quest as a major player and New Balance as an important brand in the elliptical field. This assertion is undermined by the reality of Fitness Quest's product line, which features several elliptical machines not subject to the instant motion or suit, and apparently not infringing the patent. For example, Fitness Quest sells the Eclipse 1100HR Elliptical Trainer (for $399.99), Eclipse 1100HRA Elliptical Trainer (for $449.99), and the Edge 299e Elliptical Trainer (for $299.99). Clark Decl. Exs. A–B. These examples demonstrate that the Fitness Quest name and its products play a role in the elliptical market separate from the allegedly infringing devices in question. Thus, the allegedly irreparable injury of the establishment of its name in the elliptical market could continue notwithstanding the outcome of the preliminary injunction motion. Moreover, these devices provide further proof that Fitness Quest's target market is significantly different than that of Precor.

Precor's decision to license its patent undermines its demand for exclusion. Precor has been "willing to forgo its patent rights for compensation." High Tech, 49 F.3d at 1557. This fact also weighs against a finding of irreparable harm. See, e.g., Ill. Tool Works, 906 F.2d at 683. In Illinois Tool Works, plaintiff argued, correctly, that refusing to grant a preliminary injunction whenever it appears that the defendant would be able to pay damages if ultimately found to be infringing would "disserve[] patentees and the patent system." Id. The court found, however, that plaintiff had failed to show why a licensee's permitted use of the patent was financially compensable whereas the alleged infringer's use would not be.

**D. Balance of Hardships and Public Interest**

The Court has concluded that there is substantial question of Precor's likelihood of success on the merits, and no showing of irreparable harm. For this reason, it is clear that the balance of the hardships tips in favor of Fitness Quest. There is also no public interest in allowing Precor to exclude Fitness Quest for the duration of the litigation when they are unable to show that Fitness Quest's challenge to the validity of their patent is without substantial merit.

## IV. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that plaintiff's motion for a preliminary injunction (Dkt. # 19)is DENIED.

DATED this 6th day of February, 2006.

Robert S. Lasnik
United States District Judge